# In the United States Court of Federal Claims

No. 13-587C
(Filed: November 22, 2013)*
**\*Opinion originally filed under seal on November 14, 2013**

|  |  |  |
|---|---|---|
| AQUATERRA CONTRACTING, INC., | ) ) ) | |
| Plaintiffs, | ) ) ) | Bid Protest; HUBZone Act, 15 U.S.C. |
| v. | ) ) | § 657a; Rivers and Harbors Act, 33 U.S.C. § 624; FAR 52.219-4; |
| THE UNITED STATES, | ) ) | Harmonizing Statutes; No Prejudice to Party Not Eligible for Award Under § |
| Defendant, | ) ) | 624(a)(2) |
| v. | ) ) | |
| SHAVERS-WHITTLE CONSTRUCTION, INC. | ) ) ) | |
| Defendant-Intervenor. | ) ) | |

*Stephen John Kelleher*, Washington, DC, counsel for plaintiff.

*Ellen Mary Lynch*, Civil Division, United States Department of Justice, Washington, DC, with whom were *Stuart F. Delery*, Assistant Attorney General, and *Jeanne E. Davidson*, Director, Commercial Litigation Branch, for defendant.

*Michale H. Payne*, Philadelphia, PA, counsel for defendant-intervenor.

**O P I N I O N**

**FIRESTONE**, *Judge*.

Pending before the court are the plaintiff AquaTerra Contracting, Inc.'s

("AquaTerra"), defendant United States's ("government"), and defendant-intervenor

Shavers-Whittle Construction, Inc.'s ("Shavers-Whittle") motions for judgment on the administrative record under Rule 52.1 of the Rules of the United States Court of Federal Claims ("RCFC"). This court has jurisdiction to hear this pre-award bid protest under 28 U.S.C. § 1491(b)(1).

In this action, AquaTerra seeks to permanently enjoin the Army Corps of Engineers ("the Corps") from proceeding to award Shavers-Whittle a contract to widen a canal and replace a bridge as part of the Southern Louisiana Urban Flood Control Project in Jefferson Parish, Louisiana. AquaTerra alleges that the Corps, in evaluating bids, does not intend to award the contract to a Historically Underutilized Business Act ("HUBZone") small business in violation of 15 U.S.C. § 657a and the related regulations. AquaTerra alleges that if the Corps were to apply the HUBZone Act's price preference as is required, it would be eligible for award as the lowest bidder. In response, the government and Shavers-Whittle argue that the Corps is not obligated to apply the HUBZone Act because the Corps did not include the necessary FAR provision, 52.219-4, Notice of Price Evaluation Preference, in the Invitation for Bids ("IFB"). Because AquaTerra did not challenge the omission prior to the closing of bidding, the government and Shavers-Whittle argue that its challenge to the terms of the IFB is not timely. In the alternative, the government and Shavers-Whittle argue that AquaTerra is not entitled to relief because it cannot demonstrate that it will be prejudiced by any failure to apply the HUBZone preference. The government and Shavers-Whittle contend that under 33 U.S.C. § 624(a)(2) the Corps is prevented from making an award to any contractor whose proposed price is 25% or more above the government's estimate. Here, AquaTerra's bid

2

on its face exceeded the statutory 25% threshold.  As such, the government and Shavers-Whittle argue, AquaTerra is not eligible for award of the subject contract.  AquaTerra argues that the HUBZone Act and § 624(a)(2) conflict irreconcilably, and that the conflict should be resolved in favor the HUBZone Act.  The government and Shavers-Whittle argue that the two statutes are not in conflict and may both be given effect.

For the reasons discussed below, the court **DENIES** the plaintiff's motion and **GRANTS** the defendant's and the defendant-intervenor's motion for judgment on the administrative record.

## I.   STATEMENT OF FACTS

### A.   Scope of Work

The facts are undisputed unless otherwise noted.  On July 11, 2013, the Corps issued IFB No. W912P8-13-B-0050 for the Southeast Louisiana Urban Flood Control Project, Soniat Canal, Jefferson Parish, Louisiana ("the Project").  The scope of work for the Project "consists of canal widening and bridge replacement with adjustment or roadway grade and alignment, drainage utilities, sidewalks, clearing and grubbing, excavation, embankment, demolition of existing roadways, construction of a new drainage system, roadway reconstruction, turf establishment and maintenance and incidental work thereto."  AR 1.  The solicitation was issued as an unrestricted procurement and sought to award a single firm fixed price contract.  Id.  The IFB did not include FAR 52.219-4, Notice of Price Evaluation Preference for HUBZone Small Business Concerns, as required by 48 C.F.R. § 19.1308(b) for solicitations conducted

using full and open competition.[1]  It does not appear that any bidders questioned the Corps as to why this provision was not included prior to the submission of bids.  See AR 752.

### B.    Submission of Bids

On August 13, 2013, the Corps received eight bids in response to the IFB.  AR 840.  The government conducted an Independent Government Estimate ("IGE") of the cost to complete the project and arrived at $6,491,547.46.  AR 806-09.  Of the eight bids, Shavers-Whittle's is the lowest at $8,112,605.80, while AquaTerra's is the second-lowest at $8,164,333.45.  AR 840.  AquaTerra's proposed price of $8,164,333.45 is 25.77% above the Corps' IGE, while Shavers-Whittle's bid of $8,112,605.80 is 24.97% above the Corps' IGE.  See id.  After the bids were opened, AquaTerra contacted the Corps to determine whether the HUBZone preference would be applied to the bids.  Pl.'s Motion 6.  In response, the Corps stated that, because FAR § 52.219-4 had not been included in the IFB, the preference had not and would not be applied to the bids.  Id. at 6-7.  The contract has not yet been awarded.

## II.    DISCUSSION

### A.    Standard of Review

The standard of review for a bid protest, as set forth in 28 U.S.C. § 1491(b)(4), is derived from the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), and is highly deferential.  See Advanced Data Concepts, Inc. v. United States, 216 F.3d 1054, 1058

---

[1] This provision notifies bidders that the HUBZone preference will be used in the evaluation of the bids.

(Fed. Cir. 2000).  The court's review is limited to determining whether an agency's action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and, if so, whether the error is prejudicial."  Glenn Defense Marine (Asia), PTE Ltd. v. United States, 720 F.3d 901, 907 (Fed. Cir. 2013) (citing Bannum, Inc. v. United States, 404 F.3d 1346, 1351 (Fed. Cir. 2005)).  Under this standard, the plaintiff bears a "heavy burden of proof."  E.W. Bliss Co. v. United States, 77 F.3d 445, 449 (Fed. Cir. 1996).  "[A] bid award may be set aside if either (1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure."  Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1332 (Fed. Cir. 2001) (citations omitted).  In addition, if the plaintiff's bid protest is based upon an alleged violation of law, as it is in this case, "the disappointed bidder must show a clear and prejudicial violation of applicable statutes or regulations."  Id. at 1333 (quoting Kentron Hawaii, Ltd. v. Warner, 480 F.2d 1166, 1168 (D.C. Cir. 1973); Latecoere Intern., Inc. v. U.S. Dept. of Navy, 19 F.3d 1342, 1356 (11th Cir. 1994)) (internal quotation marks omitted).  To establish prejudice, the plaintiff must demonstrate that it had "a substantial chance it would have received the contract award but for that error."  Galen Med. Assocs., Inc. v. United States, 369 F.3d 1324, 1331 (Fed. Cir. 2004) (quoting Statistica, Inc. v. Christopher, 102 F.3d 1577, 1582 (Fed. Cir. 1996)) (internal quotation marks omitted).

### B.    Statutory Background

This case involves two key statutes: the HUBZone Act, 15 U.S.C. § 657a, and 33 U.S.C. § 624.  The HUBZone Act was enacted by Congress as part of the Small Business

Reauthorization Act of 1997 in order to "target government contracts to small businesses located in economically distressed areas which employ residents from these areas." S. Rep. No. 105-62, at 4 (1997) (Conf. Rep.), reprinted in 1997 U.S.C.C.A.N. 3076, 3078. In relevant part, it provides:

> [I]n any case in which a contract is to be awarded on the basis of full and open competition, the price offered by a qualified HUBZone small business concern shall be deemed as being lower than the price offered by another offeror (other than another small business concern), if the price offered by the qualified HUBZone small business concern is not more than 10 percent higher than the price offered by the otherwise lowest, responsive, and responsible offeror.

15 U.S.C. § 657a(b)(3)(A). Thus, in qualifying circumstances, the government grants a preference to HUBZone businesses, and will award a contract to them even when their price is 10% higher than a non-HUBZone bidder.

> Section 624 was enacted by Congress in 1978. The subsection at issue states:

> Determinations respecting comparison of private contract price with estimation of cost of performance of work by Government plant or by well-equipped contractor[:]

> No works of river and harbor improvement shall be done by private contract--

> > (1) if the Secretary of the Army, acting through the Chief of Engineers, determines that Government plant is reasonably available to perform the subject work and the contract price for doing the work is more than 25 per centum in excess of the estimated comparable cost of doing the work by Government plant; or

> > (2) in any other circumstance where the Secretary of the Army, acting through the Chief of Engineers, determines that the contract price is more than 25 per centum in excess of what he determines to be a fair and reasonable estimated cost of a well-equipped contractor doing the work.

33 U.S.C. § 624(a).  Thus, the Corps may not issue an award where the bid price is more than 25% above the IGE.[2]

### C.   AquaTerra Has Not Been Prejudiced Because 33 U.S.C. § 624 Prohibits an Award to AquaTerra

There are two main disputes between the parties.  First, the parties dispute whether the government is required to apply the HUBZone Act to this procurement, and whether AquaTerra has waived its right to bring such a challenge.  Second, the parties dispute whether AquaTerra is eligible for an award even if the HUBZone preference applies.  Because the court finds that AquaTerra is not eligible for award based on its bid price, the court does not reach the question of whether plaintiff has waived its ability to challenge the terms of the IFB or whether the HUBZone Act must be applied.[3]

---

[2] As in other cases in this court, the court considers the IGE to be the "fair and reasonable estimated cost" for the purposes of § 624(a)(2).  See, e.g., Manson Const. Co. v. United States, 64 Fed. Cl. 746 (2005) (using initial government estimate as estimate for § 624(a)(2)); Great Lakes Dredge & Dock Co. v. United States, 60 Fed. Cl. 350 (2004) (using original government estimate as estimate for § 624(a)(2)).

[3] AquaTerra argues that its challenge to the IFB is timely, despite the ruling in Blue & Gold Fleet, L.P. v. United States, 492 F.3d 1308, 1313 (Fed. Cir. 2007), that bidders must bring challenges before bidding is closed.  According to plaintiff, the HUBZone Act creates a statutory preference that cannot be waived, as held in Delaney Const. Corp. v. United States, 56 Fed. Cl. 470, 475 (2003) ("The price evaluation provision of the HUBZone Act . . . applies directly to all applicable contracts.  It is not necessary to add or 'read into' a contract, any clause, such as the FAR 52.219–4 notice clause, to cause a solicitation to become subject to this statutory provision.  The application of the Act is not conditioned on the presence of a contract clause.").  Plaintiff distinguishes this from the Blue & Gold line by arguing that those cases involve discretionary provisions that the contract may or may not include.  In response, the government and Shavers-Whittle argue that Blue & Gold overruled Delaney, leaving the challenge rule without such exceptions.  As a result, the government and Shavers-Whittle argue, AquaTerra has waived its challenge.  Additionally, they argue that, as there are methods by which the HUBZone preference may be explicitly waived by an otherwise-qualified bidder, FAR 52.219-4(c), it does not rise to the same level as, for example, a statutory non-discrimination provision that cannot be waived, and thus should be subject to the Blue & Gold limit.  As noted above, the court does not resolve this question.

The key question in deciding whether AquaTerra is eligible for award—and has therefore been prejudiced by the Corps' failure to apply the HUBZone preference—is whether or not the HUBZone Act and 33 U.S.C. § 624(a)(2) are in irreconcilable conflict. AquaTerra argues that they are, and that the conflict should be resolved in favor of the HUBZone Act. According to AquaTerra, § 624(a)(2) is not a barrier to award because the section does not set a ceiling for HUBZone contractors when at least one other bid falls below the statutory cap. The government and Shavers-Whittle argue that the IGE sets a ceiling for all contracts, but that this cap does not mean that the statutes cannot be harmonized. According to the government and Shavers-Whittle, so long as the HUBZone contractor's bid falls within the § 624(a)(2) statutory cap, the HUBZone preference can be applied. For the reasons set forth below, the court holds that the statutes are not in conflict and may both be given effect. As a result, the court finds that where, as here, a bidder's price is more than 25% greater than the government estimate, the Corps is prohibited from making an award of the contract to that bidder under 33 U.S.C. § 624(a)(2); thus, AquaTerra, with a bid more than 25% greater than the IGE, cannot show that it was prejudiced by the government's alleged violation of the HUBZone Act.

To begin, there is no dispute that AquaTerra's proposed price of $8,164,333.45 is 25.77% above the Corps' IGE of $6,491,547.46. Thus, on the face of its bid, AquaTerra is not eligible to be awarded the contract. In order to overcome the statutory prohibition established in 33 U.S.C. § 624(a)(2), AquaTerra makes two main arguments. First, AquaTerra argues that the HUBZone Act implicitly repeals the portions of § 624(a)(2)

with which it allegedly conflicts.  Second, AquaTerra argues that its bid or the

government estimate should be adjusted to account for profit.  AquaTerra cannot succeed

on either theory.

### 1. There Is No Conflict Between the HUBZone Act and 33 U.S.C. § 624(a)(2)

It is generally recognized that if Congress intends one statute to repeal an earlier

statute or section of a statute, Congress will usually do so directly in the repealing act.

See United States v. Fausto, 484 U.S. 439, 453 (1988) ("[I]t can be strongly presumed

that Congress will specifically address language on the statute books that it wishes to

change . . . .") (citing Morton v. Mancari, 427 U.S. 535 (1974)).  This is because "repeals

by implication are not favored . . . and will not be found unless an intent to repeal is clear

and manifest."  Rodriguez v. United States, 480 U.S. 522, 524 (1987) (citations omitted);

see also Morton, 417 U.S. at 550-51 ("Where there is no clear intention otherwise, a

specific statute will not be controlled or nullified by a general one, regardless of the

priority of enactment.") (citations omitted).  In some situations, however, a potential

conflict in the application of two federal statutes arises and Congress is silent as to their

relationship.  In those cases, courts are charged with trying to harmonize the two statutes

so that both can be given effect.  Specifically, courts are tasked wherever possible to

"read [two allegedly conflicting] statutes to give effect to each if [they] can do so while

preserving their sense and purpose."  Watt v. Alaska, 451 U.S. 259, 266-67 (1981).  Only

if the statutes are "irreconcilably conflicting," id. at 266 n.146, or the "later one . . . is

clearly intended as a substitute," <u>Posadas v. Nat'l City Bank of New York</u>, 296 U.S. 497, 503 (1936), will the court find the later of the two prevails.

Tested by these standards, the court agrees with the government and Shavers-Whittle that there is no reason for the court not to apply § 624 together with the HUBZone Act and hold that AquaTerra is ineligible for award on the grounds that its bid exceeds the 25% threshold in § 624(a)(2). The government and Shavers-Whittle argue that there is nothing in the HUBZone Act to suggest that § 624 should not be applied to bids submitted by HUBZone contractors, and thus there is no direct repeal of § 624(a)(2). The court agrees. The HUBZone Act is silent with regard to § 624 as a whole and there is nothing in the language of the HUBZone Act or its legislative history to suggest that the HUBZone Act was specifically intended to supersede the application of § 624(a)(2). As a result, there is simply no basis to conclude that the HUBZone Act effected a direct repeal of § 624(a)(2) by Congress.

The court also agrees with the government and Shavers-Whittle that there is no reason to find that there has been a repeal of § 624(a)(2) by implication based on some "irreconcilable" conflict between the two statutes. The 25% cut off established in § 624 serves as cap on government spending, while the HUBZone Act deals with contractor preferences. Specifically, the HUBZone Act provides that a qualified HUBZone business is to be given a preference in awarding a contract where the HUBZone business's price is not more than 10% higher than that of the lowest bidder, while § 624 provides that no contract may be awarded to any bidder whose price is more than 25% about the government estimate. These statutes are not in conflict with each other. To the contrary,

they can be easily harmonized.  Under these statutes (assuming that the HUBZone Act must be applied), AquaTerra would be designated the lowest bidder—but eligible for award only if AquaTerra's price fell within the § 624(a)(2) cap in the first instance.  So long as it is possible for a HUBZone contractor to secure a contract if it does not exceed the § 624(a)(2) cap, there is nothing irreconcilable between the two statutes.  The court therefore finds that, in order for AquaTerra to be eligible for award, its price had to comply with the 25% cap set in § 624(a)(2).

At oral argument, plaintiff additionally argued that the intent of the HUBZone Act is to give preference to small, local businesses over large ones whenever possible, and that this brings it into conflict with § 624 when the latter prevents the implementation of the former.  However, this interpretation of the intent of the HUBZone Act is unsupported.  Congress has revised the HUBZone Act on several occasions and has declined to take the opportunity to give HUBZone businesses preference in situations involving statutory bid caps.  In fact, Congress in 2010 removed language stating that the HUBZone preference applied "[n]otwithstanding any other provisions of law," and thus cannot be presumed to have waived § 624.  Compare 15 U.S.C. § 657a(b)(2) (2004) (containing quoted language), with 15 U.S.C. § 657a(b)(2) (2010) (language removed).  As repeals by implication are disfavored in the first instance, as discussed above, this court cannot accept plaintiff's argument as to the intent of Congress when there is nothing in the statute or legislative history of the HUBZone Act to suggest that § 624 should not apply.

### 2.      There Is No Reason to Adjust the IGE or AquaTerra's Bid to Account for Profit

The court now turns to AquaTerra's contention that it should be eligible for award because the Corps' IGE should not be set at $6,491,547.46, but instead should be increased by some unspecified amount in order to include profit for the bidder or that profit should be subtracted from the bids before evaluation.  According to AquaTerra, § 624(a)(2) by its terms only bars award where the contract price is more than 25% above what the Chief of Engineers determines to be a "fair and reasonable estimated cost of a well-equipped contractor doing the work."  33 U.S.C. § 624(a)(2).  AquaTerra argues that under this provision, the Chief of Engineers does not have to account for profit and therefore profit must be accounted for in the bids in order to make a fair comparison between an IGE and a HUBZone contractor's bid, as the latter would include profit.  Both the government and Shavers-Whittle challenge this reading of § 624 as contrary to the language and intent of the provision and the court agrees.

AquaTerra's argument conflicts with the plain language of § 624(a)(2), which requires a comparison between the contractor's price and the fair and reasonable estimated cost plus 25%.  Section 624(a)(2) does not preclude awards based on the IGE alone, but rather allows the government to add 25% to the IGE to provide for a fair comparison.[4]  There is simply nothing in the language of § 624 to suggest that profit

---

[4] In fact, the legislative history of § 624 indicates that the 25% added to the government estimate was intended in part to account for the profit of the bidder.  S. Rep. 95-722, at 4, reprinted in 1978 U.S.C.C.A.N. 652, 655 (1978) (Conf. Rep.) ("The 25 percent factor discussed above and utilized in current regulations provides sufficient latitude for profit and the contractor's own decision as to whether he wishes to set aside funds for replacement." (text formatted)).

separate and apart from the additional 25% provided for by statute must be added to the IGE in order to make a lawful comparison.[5]

In this connection, AquaTerra's reliance on <u>Valley Const. Co.</u>, B-247461.2, 92-2 CPD ¶ 79, 1992 WL 199814 (Comp. Gen. Aug. 6, 1992), to suggest that profit must be added to the IGE for purposes of applying the 25% comparison is unsupported. The Government Accountability Office ("GAO") in <u>Valley</u> recognized that statutes can sometimes affect the prices at which the government can award contracts. At issue in <u>Valley</u> was whether a small disadvantaged firm within the meaning of § 8(a) of the Small Business Act had submitted a bid that exceeded the "fair market price" set in FAR 19.806(b). The GAO determined that the bid price did not exceed fair market price (when profit was added) even though it was 24.7% higher than the government's IGE. In concluding that the price was a fair market price, the GAO relied in part on the fact that the bid price with profit was still less than the 25% cap set under § 624(a)(2). There was nothing in the <u>Valley</u> decision to suggest that a dollar amount for profit or risk must be added to the IGE or subtracted from the bid prices in order to determine contractor eligibility under § 624(a)(2) in the first instance. To the contrary, the GAO's consideration of estimated profit in <u>Valley</u> was made for comparison purposes under §

---

[5] If a bidder believes that the IGE is flawed in a way that creates prejudice, or if it believes that the IGE does not allow a prospective bidder to reliably complete a project while retaining a profit, the bidder is not without recourse and may raise the correctness of the IGE as part of a bid protest. <u>See, e.g.</u>, <u>Moore's Cafeteria Servs. v. United States</u>, 77 Fed. Cl. 180, 181 (2007) (involving challenge to government estimate), <u>aff'd</u> 314 F. App'x 277 (Fed. Cir. 2008). In this case, however, AquaTerra has not challenged the correctness of the IGE but instead argues that it is entitled to an adjustment of the IGE to account for profit, simply so that it can meet the 25% threshold in § 624(a)(2).

8(a) only and did not alter the need for the contractor to meet the 25% threshold set in § 624(a)(2).

In view of the foregoing, AquaTerra cannot establish substantial prejudice because its bid is more than 25% above the government estimate and thus AquaTerra is not eligible for the contract award under the terms of § 624(a)(2).

## III.   CONCLUSION

Because the court finds that the plaintiff cannot show substantial prejudice, the court **DENIES** the plaintiff's motion and **GRANTS** the defendant's and the defendant-intervenor's motions for judgment on the administrative record.  Each party shall bear its own costs.

**IT IS SO ORDERED.**

s/Nancy B. Firestone
NANCY B. FIRESTONE
Judge